**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE STRIVELLI,<br><br>                    Plaintiff,<br><br>         v.<br><br>JOHN DOE,<br><br>                    Defendant. | Civil Action No. 22-2060 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Jesse Strivelli's ("Strivelli") ex parte Motion for Expedited Discovery (ECF No. 1-2) and ex parte Motion for Temporary Restraining Order (ECF No. 1-3) against unknown Defendant John Doe ("Doe"). The Court has carefully considered Strivelli's submissions and decides this matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Strivelli's Motion for Expedited Discovery and defers on his Motion for Temporary Restraining Order.

**I.      BACKGROUND**

This is a case of cryptocurrency theft. Back in June 2021, Strivelli purchased thirty-seven smart contracts that generated cryptocurrency revenue. (Compl. ¶¶ 21, 23, ECF No. 1; Strivelli Decl. ¶ 3, ECF No. 1-4.) At some other time not specified in the Complaint, Strivelli also purchased other cryptocurrency and digital assets. (Strivelli Decl. ¶ 6.) Strivelli stored his contracts and digital

assets on two virtual "hot" wallets.[1] (*Id.* ¶ 4.) Virtual wallets are like traditional bank accounts in that they require an account number (a public key) and a personal identification number (a private key) to access. As their names imply, public keys are visible to the public while private keys are not. But because hot wallets are constantly online, their stored private keys are vulnerable to hacking attempts.

That susceptibility forms the crux of this case. On December 28, 2021, Doe convinced Strivelli to screen share his computer with Doe. (Compl. ¶¶ 16-17.) Unbeknownst to Strivelli at the time, however, Doe seized that opportunity to uncover Strivelli's private keys. (*Id.* ¶ 18.) Armed with both of Strivelli's keys, Doe then transferred Strivelli's digital assets to another hot wallet presumably owned by Doe. (*Id.* ¶ 20. *See generally* Coinfirm Fraud Report, ECF No. 1-13.) Doe also continues to siphon off the cryptocurrency revenue generated by Strivelli's smart contracts. (Compl. ¶ 30; Strivelli Decl. ¶ 19.) The amount of stolen assets is no pittance: the Complaint and supporting documents show that Doe pilfered $68,000 in digital assets and more than $34,000 in smart contract revenue. (Strivelli Decl. ¶¶ 6, 19.) Strivelli also asserts that he has incurred almost $38,000 in transaction fees since the theft because he has been forced to move money out of the compromised wallets more frequently. (Compl. ¶ 33.)

In any event, because of the pseudonymity cryptocurrency transactions afford, Strivelli does not know the identity of Doe. That said, he enlisted a cryptocurrency consulting firm, Coinfirm, to help trace the stolen assets. (*Id.* ¶ 39.) Coinfirm confirmed that Doe had transferred the assets between multiple other hot wallets—some of which were hosted by virtual cryptocurrency exchanges such as Coinbase, StrongBlock, Gate.io, KuCoin, Crypto.com, FTX,

---

[1] Also called software wallets, hot wallets are always connected to the Internet, thereby making cryptocurrency transactions easier to execute. By contrast, cold wallets are stored in offline infrastructure.

and OpenSea (collectively, the "Exchanges"). (*Id.* ¶¶ 40, 42.) Strivelli's Complaint alleges that the Exchanges "have the identity of John Doe, as well as information about John Doe's accounts." (*Id.* ¶ 43.) Specifically, the Complaint alleges that these exchanges keep certain know-your-customer information about Doe, including Doe's name, date of birth, government identification, residence, business location, phone number, and email address. (*Id.* ¶ 41.)

Strivelli sued Doe for nine counts, including under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (*See generally id.*) Because he does not know Doe's identity, he has not yet served Doe. Nevertheless, the Complaint asserts that Doe is a U.S. citizen from Bellevue, Washington based on online representations Doe has made. (*See id.* ¶ 8.) Alongside his Complaint, Strivelli also moved the Court for an ex parte temporary restraining order and separately for expedited discovery. Among other things, Strivelli seeks to enjoin Doe and the Exchanges from transacting with his stolen assets. (*See generally* Mot. for TRO, ECF No. 1-3.) He further seeks third-party discovery from the Exchanges for "documents and information pertaining to the identity of [D]efendant John Doe." (*See* Mot. for Expedited Disc., ECF No. 1-2.)

## II.  **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). The Court, however, may grant leave to conduct discovery before that conference. *Id.* In ruling on a motion for expedited discovery, the Court should consider "the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Better Packages, Inc. v. Zheng*, No. 05-4477, 2006 WL 1373055, at *2 (D.N.J. May 17, 2006) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)). Generally, a "good cause" standard applies to motions for expedited discovery, whereby the court considers the totality of the circumstances to discern whether the need for expedited discovery, in

3

consideration of the administration of justice, outweighs the prejudice to the responding party. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-2674, 2020 WL 3567282, at *4-5 (D.N.J. June 30, 2020) (applying non-exclusive list of factors for determining "good cause"); *Leone v. Towanda Borough*, No. 12-429, 2012 WL 1123958, at *2-3 (M.D. Pa. Apr. 4, 2012) (applying good cause standard to request for expedited discovery).

**III.   DISCUSSION**

The Court has jurisdiction under 28 U.S.C. § 1331. It begins with Strivelli's motion for expedited discovery because that motion relates to threshold issues of personal jurisdiction and service of Doe. Considering the totality of the record, the Court finds good cause to allow expedited discovery. Principally, Strivelli needs this discovery to learn the identity of Doe so that he can properly serve the Complaint. The facts speak for themselves as to why Strivelli cannot know Doe's identity: Strivelli met Doe online and never learned Doe's real name or current geographic location. Even if he had, as a hacker, Doe had little reason to be truthful with Strivelli. Notably, the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants. *See, e.g.*, *ZG Top Tech. Co. v. Doe*, No. 19-92, 2019 WL 917418, at *2 (W.D. Wash. Feb. 25, 2019); *Heissenberg v. Doe*, No. 21-80716, 2021 WL 2621100, at *1 (S.D. Fla. June 24, 2021); *SingularDTV GmbH v. Doe*, No. 21-6000, 2021 WL 3668161, at *1 (S.D.N.Y. Aug. 16, 2021).

Nor is the requested discovery unreasonable. Strivelli has provided compelling evidence that traces his stolen assets to wallets and transactions on the Exchanges. For example, the Complaint attaches a report by Coinfirm that verifies that certain wallets on the Exchanges received Strivelli's stolen assets. (*See generally* Coinfirm Fraud Report.) The report further verifies that at least some of the Exchanges are "obliged to perform KYC ("Know Your Client") checks on onboarding" that would allow Strivelli to learn Doe's identity. (*Id.* at 13.) In addition,

4

Strivelli properly tailored his discovery to learning the identity of Doe and finding information about the wallets identified in the Coinfirm report. (*See* Strivelli's Proposed Order for Expedited Discovery 2, ECF No. 1-15 (seeking documents related to nine specific wallets and documents related to Doe's transactions on the Exchanges).) Further, the Court is unaware of any other way for Strivelli to obtain this information, especially considering the pseudonymity and complexity of cryptocurrency transactions. Finally, the Court notes that "expedited discovery is particularly appropriate" when, as here, "a plaintiff seeks injunctive relief." *Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 344-45 (D.N.J. 2020) (quoting *Phila. Newspapers v. Gannett Satellite Info. Network*, No. 98-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998)).[2]

## IV.   CONCLUSION

The Court grants Strivelli's Motion for Expedited Discovery. It will await the benefit of discovery and any subsequent service of process on Doe before addressing Strivelli's Motion for Temporary Restraining Order. An appropriate order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[2] Any discovery disputes arising out of this third-party discovery should be addressed to the Magistrate Judge assigned to this matter.